No. 15-6048

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**ELBERT COX, JR., CECIL WAYNE FRANKLIN, JOHN SPEARS, WANDA BEASLEY, DONALD KING, LINDSEY PENNINGTON, TERESA PRESTON, AND BEVERLY PRESLEY (PERSONAL REPRESENTATIVE OF THE ESTATE OF ANNABELL GORDON), On Behalf Of Themselves And All Others Similarly Situated,**

      **Plaintiffs-Appellants**

**v.**

**KONINKLIJKE PHILIPS, N.V., a Netherlands Corporation AND PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, a Delaware Corporation,**

      **Defendants-Appellees**

---

**Appeal From The United States District Court
For The Eastern District of Kentucky (Central Division at Lexington)**

**Case No. 13-CV-00406 (GFVT)
The Honorable Judge Gregory F. Van Tatenhove**

---

## APPELLANTS' RESPONSE IN OPPOSITION TO
## <u>APPELLEES' MOTION FOR SANCTIONS AND DAMAGES</u>

---

RICHARD A. GETTY
        and
JESSICA K. WINTERS

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:   (859) 259-1909
rgetty@gettylawgroup.com
jwinters@gettylawgroup.com

Counsel For Appellants,
Elbert Cox, Jr., Cecil Wayne Franklin,
John Spears, Wanda Beasley, Donald
King, Lindsey Pennington, Teresa
Preston, And Beverly Presley
(Personal Representative Of The
Estate Of Annabell Gordon), On
Behalf Of Themselves And Others
Similarly Situated

## I.    __INTRODUCTION__

Plaintiffs-Appellants Elbert Cox, Jr., Cecil Wayne Franklin, John Spears, Wanda Beasley, Donald King, Lindsey Pennington, Teresa Preston, And Beverly Presley (Personal Representative Of The Estate Of Annabell Gordon), On Behalf Of Themselves And Others Similarly Situated (the "Plaintiffs"), through counsel, submit this Response in opposition to the Motion For Damages Under FRAP 38 And For Sanctions Under 28 U.S.C. § 1927 ("Motion for Damages") filed by Defendants-Appellees, Koninklijke Philips, N.V. ("KPNV") and Philips Electronics North America Corporation ("Philips"), (collectively "Defendants"). [DE 21].  In support of their Response, the Plaintiffs respectfully state as follows:

The Defendants' Motion for Damages is entirely without merit.  There is nothing remotely frivolous about this appeal nor any of the arguments raised by the Plaintiffs.  The Plaintiffs have a justified and reasonable expectation of altering the District Court's judgments, and the record is completely devoid of any evidence of an intentional abuse of the judicial process.  Instead, the Plaintiffs have pursued this entire case, both the underlying litigation and the instant appeal, in good faith and have properly supported their arguments with relevant authority and citations to the record.  As explained more fully below, the Defendants are not entitled to damages or sanctions, and their spurious Motion must be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Between 1983 and 2011, Philips operated a glass and bulb manufacturing facility in Danville, Kentucky (the "Facility"), located at 320 Vaksdahl Avenue (the "Site").  The Plaintiffs, on behalf of themselves and all other similarly situated former employees of Philips who worked in the Facility, filed a detailed Class Action Complaint [Complaint ("Compl."), RE 1] (which was subsequently amended twice – see First Amended Compl., RE 8; Second Amended Compl., RE 76) in this matter alleging claims against the Defendants for (I) Deliberate Intention, (II) Negligence, Gross Negligence, and Recklessness; (III) Strict Liability; (IV) Negligent Infliction of Emotional Distress; (V) Fraudulent Concealment; (VI) Fraud; and (VII) Medical Monitoring.

The Plaintiffs' claims, which include claims of physical and mental injury, arise from Defendants' actions in intentionally exposing them to toxic, carcinogenic, and otherwise ultra-hazardous chemicals (the "Hazardous Substances") without warning them, properly training them, and without providing proper protective covering.  In support of their claims, the Plaintiffs obtained evidence establishing that both Defendants intentionally exposed Plaintiffs to conditions that they knew to be unreasonably dangerous and substantially likely to result in injury and death – even after Defendants knew that the Plaintiffs had

3

suffered injury as a result of those conditions. The evidence further demonstrated that both Defendants refused to provide Plaintiffs with proper protective apparel and intentionally failed to repair protective machinery. [Second Amended Compl., RE 76, Page ID #1637, 1650-1651].

The Plaintiffs' claims arise from a concerted scheme and corporate policy adopted by Defendants to conceal and misrepresent information regarding the safety of the Facility, the effects of the Plaintiffs' exposure to the Hazardous Substances, and the injuries suffered by the Plaintiffs throughout the Relevant Time Period for the purpose of saving money and assuring that Plaintiffs unknowingly continued to work in this hazardous environment.

### B.    **Procedural Background**

The Defendants' description of the procedural background and corresponding commentary requires clarification from the Plaintiffs. The Defendants are correct that the District Court did eventually conduct an evidentiary hearing on the issue of personal jurisdiction as it relates to KPNV. [Minute Entry, 5:13-405, RE 101, Page ID# 1667.] The Order setting that hearing [Order dated 12/23/14, RE 44, Page ID# 582-585], however, came nearly five months after the Defendants' Motions to Dismiss were fully briefed and only after KPNV requested oral argument. Although KPNV did not request an evidentiary hearing, the District Court scheduled an evidentiary hearing for February 9, 2015. The hearing

was later rescheduled at the request of the parties to March 9, 2015.  [See Joint Motion, 5:13-405, RE 80, Page ID# 1088-1090; Order dated 2/9/15, RE 81, Page ID# 1093-1095.].

The Defendants disparagingly (and incorrectly) suggest that shortly before the February 9th hearing date, the Plaintiffs "apparently realized they needed to come forward with evidence, rather than mere unsupported allegations" and moved for leave to take depositions.  [Motion for Damages, R. 21, p. 5.]  Of course, the Defendants should know, and the record demonstrates, that the truth of the matter concerning the Plaintiffs' request for leave to take depositions is that it was filed on February 26, 2015.  [Motion for Leave, RE 52, Page ID# 690-92.]  The basis for that Motion was the sudden unavailability of two non-party, out-of-state witnesses who were no longer able to appear at the scheduled hearing because of unusually severe weather.  [Id.; see also Reply, RE 55, Page ID# 708-716.]  The District Court granted the Plaintiffs' Motion (over the Defendants' objections) [Order, RE 57, Page ID# 728], but the Plaintiffs only ended up needing to take one of the depositions.

Incredibly, the Defendants also assert that the Plaintiffs took "only a single deposition of a non-party witness in their effort to prove KPNV was subject to personal jurisdiction[, and they] took no discovery of KPNV."  [Motion for Damages, R. 21, p. 5.]  The simple fact of the matter is that the Plaintiffs could not

take any discovery of KPNV, in part because of the recalcitrant refusal of KPNV's attorney to agree to Plaintiffs' request for any discovery – a material fact conveniently omitted from the Defendants' Motion for Damages. Moreover, when the Plaintiffs formally asked for jurisdictional discovery, the District Court did not allow even this limited discovery.

Obviously, without permission from the District Court, the Plaintiffs could serve no written discovery on KPNV, nor could they schedule depositions of KPNV corporate representatives. Because the District Court opted for an evidentiary hearing instead of permitting jurisdictional discovery, the Plaintiffs could not call KPNV representatives as witnesses because KPNV is well outside of the District Court's subpoena power. The Plaintiffs were therefore effectively precluded from calling any witnesses who could testify about the KPNV's organizational structure, its oversight and management of the Philips plant in Danville, the amount of revenue it derives in Kentucky, its knowledge of and role in making environmental decisions, and any agreements it entered that would provide direct contacts with Kentucky. In other words, the Plaintiffs were tasked with demonstrating at the evidentiary hearing that KPNV has sufficient jurisdictional contacts with Kentucky but were precluded from asking any questions of a single employee or representative of KPNV.

The Defendants now (erroneously) contend that the Plaintiffs failed to produce any evidence that KPNV has any connection with Kentucky other than owning a subsidiary that has operations there. Despite the numerous obstacles placed before the Plaintiffs, and contrary to the Defendants' claims, the Plaintiffs did in fact proffer testimony and evidence demonstrating that KPNV representatives visited the Facility on several occasions to oversee the installation of new equipment that generated at least one of the Hazardous Substances (lead) at issue in this litigation, and that KPNV was directly involved in and indeed supervised certain aspects of the environmental cleanup related to the Hazardous Substances produced at the Facility. [See Plaintiffs' Sur-Reply in Opposition to Motion to Dismiss, RE 72, Page ID# 1616-1621.] The Plaintiffs also provided testimony that Mr. Cees Burger, who participated in a series of meetings regarding the potential sale of the Facility and appeared to be making final decisions regarding environmental issues, specifically identified himself as a representative of KPNV. [Deposition of Scott Harris, Ph.D., RE 64, Page ID# 856-857.]

Despite the evidence noted above, and without ever permitting jurisdictional discovery, the District Court ultimately granted KPNV's Motion to Dismiss, finding that it lacked personal jurisdiction over the foreign entity. [Mem. Opin. & Order dated 3/31/15, RE 71, Page ID #1591-1611]. The District Court's dismissal of KPNV and Plaintiffs' claims against it was without prejudice. [Id., Page ID

#1611]. The District Court also dismissed all of Plaintiffs' claims against Philips, except for their claims of fraudulent concealment and fraud, with prejudice. [Mem. Opin. & Order dated 3/31/15, RE 70, Page ID #1590]. Although the Plaintiffs' claim for fraudulent concealment survived Philips' Motion to Dismiss, the District Court dismissed Plaintiffs' claim for fraud without prejudice, on the grounds that Plaintiffs must amend their Complaint to more specifically state the dates on which the alleged fraud occurred. [Id.]. The District Court's dismissal of Plaintiffs' claims for negligence, negligent infliction of emotional distress, negligence per se, strict liability, and medical monitoring was premised upon its finding that the claims are barred by the exclusivity provisions of the KWCA. In so holding, the District Court rejected Plaintiffs' argument that these claims either fall outside the KWCA or satisfy the deliberate intention exception to the Act's exclusivity provisions – issues now on appeal before this Court. With respect to the Plaintiffs' fraud claims, however, the District Court found that the Plaintiffs' First Amended Complaint contains allegations sufficient to satisfy the exception.

Plaintiffs thereafter filed their Second Amended Complaint [Second Amended Compl., RE 76, Page ID #1629-1666] to provide additional detail regarding the Defendants' fraud and were prepared to move forward with discovery after two-plus years of constant delay occasioned by Philips' and KPNV's pretrial motion practice. Before discovery could occur, however, Philips

moved the District Court, pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure, to reconsider its conclusion that Plaintiffs sufficiently alleged deliberate intention with respect to their fraud and fraudulent concealment claims. [Motion to Reconsider, RE 79, Page ID #1692-1695]. Disregarding the fact that Fed. R. Civ. P. 60(b) is not the proper procedural vehicle for relief sought by Philips, the District Court granted Philips' Motion by Order dated September 11, 2015, [Mem. Opin. & Order dated 9/11/15, RE 89, Page ID #1832-1841], reversing its earlier ruling and holding that the fraud and fraudulent concealment claims are also barred by the KWCA's exclusivity provisions. The District Court then dismissed the entire proceeding with prejudice. This appeal followed.

## III.    ARGUMENT

The Defendants assert that the Plaintiffs and their counsel should be sanctioned under either or both Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1927 for bringing the present appeal. Regardless of the purported basis for the Motion, however, the record is absolutely clear – sanctions are not warranted here and would in fact be wholly inappropriate in this case.

Rule 38 of the Federal Rules of Appellate Procedure permits this Court to "award just damages and single or double costs to the appellee" if it "determines that an appeal is frivolous." Fed. R. App. P. 38. Such sanctions may be appropriate when an appeal is "wholly without merit" or when the appellant's

9

"arguments essentially had no reasonable expectation of altering the district court's judgment based on law or fact." B&H Med., L.L.C. v. ABP Admin., Inc., 526 F.3d 257, 270 (6th Cir. 2008) (quoting Wilton Corp. v. Ashland Castings Corp., 188 F.3d 670, 677 (6th Cir. 1999)).  While a finding of bad faith is not required, see id., this Court has noted that it "will usually impose Rule 38 . . . sanctions only where there was some improper purpose, such as harassment or delay, behind the appeal." Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1212 (6th Cir. 1997) (emphasis added).

The Defendants also suggest that 28 U.S.C. § 1927 permits the imposition of sanctions against the Plaintiffs.  Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927

This Circuit has construed the phrase "vexatiously multiplying proceedings" to include conduct where "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." Shepherd v. Wellman, 313 F.3d 963, 969 (6th Cir. 2002) (quoting Jones v. Cont'l Corp., 789 F.2d 1225, 1232 (6th Cir. 1986)).  Yet, sanctions under § 1927 are only appropriate where the attorney

10

"intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006) (citation omitted). The purpose behind such sanctions is "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." Garner v. Cuyahoga Cnty. Juvenile Ct., 554 F.3d 624, 644 (6th Cir. 2009) (quotation omitted).[1]

### A. The Plaintiffs Have Raised Legitimate Arguments That Their Claims Are Not Barred By The Kentucky Workers' Compensation Act.

Before turning to the Defendants' misplaced arguments about the KWCA's exclusivity provision, it is important to note that because KPNV did not directly employ any of the Plaintiffs, it is not entitled to any of the protections afforded by the KWCA, including its exclusivity provision. Thus, to the extent that personal

---

[1] A review of the record, which includes motion after motion filed by the Philips entities, reveals a consistent pattern of obstruction of discovery and delay. Philips filed not one but two Motions to Dismiss which precluded any Rule 26 pre-discovery steps from going forward. After nearly three years, the Plaintiffs have yet to see Philips produce the first shred of paper. Based on other documents obtained through Open Records requests, Plaintiffs firmly believe Philips' own documents contain damning information showing their knowledge of the serious risks of harm to their employees and establish their efforts to prevent any inquiry into these matters. Given this record of multiple filings to obstruct any scrutiny, the Court should ask who indeed should be sanctioned under § 1927 – the Plaintiffs or Philips?

jurisdiction over KPNV is proper (or could be established with jurisdictional discovery), KPNV cannot seek refuge in the exclusivity provision of the KWCA because KPNV is not the Plaintiffs' employer.  See <u>Boggs v. Blue Diamond Coal Co.</u>, 590 F2d 655, 663 (6th Cir. 1979) ("[W]e conclude that under the [KWCA] a parent is not immune from tort liability to its subsidiary employees for its own, independent acts of negligence.").

As it relates to the Plaintiffs' claims against Philips, the Defendants' assertion that the Plaintiffs should be sanctioned for bringing this appeal is without merit.  The Plaintiffs have previously conceded that the Kentucky Workers' Compensation Act ("KWCA") <u>generally</u> provides an exclusive remedy to injured workers, <u>see</u> KRS 342.690(1).  [<u>See</u> Reply Brief, R. 26, p. 14.]  However, there is an exception to the exclusivity provision whereby an employee may bring an action in tort "[i]f injury or death results . . . through the deliberate intention of his employer to produce such injury or death."  KRS 342.610(4).  Similarly, claims that are not compensable under the KWCA are also not subject to the exclusivity provision.  See <u>Haggard v. Martin</u>, 2002 U.S. Dist. LEXIS 7379, *6-7 (W.D. Ky. Apr. 25, 2002) ("[T]he workers' compensation system exists to compensate physical injuries, not injuries that are primarily emotional or pecuniary.  It follows logically that the KWCA should not bar actions for such injuries, because it offers no remedy for them.").

The Plaintiffs have argued that some of their claims satisfy the deliberate intention exception to the KWCA's exclusivity provision, while others fall outside of the Act's purview because they do not relate to a compensable injury as defined in the KWCA. While the Plaintiffs will not reiterate their entire arguments here, imposing sanctions for the arguments they have raised would have a chilling effect on advocacy. There are legitimate questions about the proper scope of the deliberate intention exception and whether the facts of this case, as alleged and demonstrated by the Plaintiffs' evidence, satisfy that exception. And, as the Court can see from the cases discussed in the parties' Briefs, the relevant questions are highly fact-specific. Likewise, the Plaintiffs' claim for negligent infliction of emotional distress appears to fall squarely within applicable case law removing purely psychological claims from the purview of the KWCA – an argument that both the District Court and the Defendants have essentially ignored.

In addition, the Plaintiffs pointed out to the District Court that the Kentucky Supreme Court had not considered the scope of the deliberate intention exception since 2004, in Moore v. Envtl. Constr. Corp., 147 S.W.3d 13 (Ky. 2004). Importantly, the dissent in that case, which was joined by three members of the Court, discussed with approval the "substantial certainty" test adopted by other jurisdictions. Given that in 2004 only a narrow majority of Kentucky's highest Court continued to adhere rigidly to a narrow interpretation of the deliberate

intention exception, Plaintiffs argued that it was highly likely that if presented with the question on certification the Kentucky Supreme Court would adopt the substantial certainty test that embodies the recent trend with respect to this issue. Plaintiffs stated: "Plaintiffs believe they have alleged sufficient facts bringing their claims within the deliberate intention exception as that exception has been interpreted and applied by Kentucky Courts.  Plaintiffs request that the Court either apply the substantial certainty test of its own accord or certify the question to the Kentucky Supreme Court."  [Plaintiffs' Response to Motion to Dismiss, RE 15, p. 30, Page ID# 172].  The Plaintiffs' request not addressed by the District Court.

The Plaintiffs' arguments rely on applicable case law and statutory provisions, are supported by facts in the record, and have been pursued in good faith.  The Plaintiffs have pursued their claims zealously but have also done so with a justified and reasonable expectation of altering the District Court's Judgment – making the imposition of sanctions entirely improper.

The Defendants' effort to paint the Plaintiffs' conduct as worthy of sanctions is also not supported by the record or the authority cited in their Motion.  For example, the Defendants cite McCarty v. Verizon New England, Inc., 772 F. Supp. 2d 362 (D. Mass. 2011), suggesting that sanctions were appropriate because "no reasonable attorney . . . would have failed to recognize the exclusivity provision as an absolute bar."  [Motion for Damages, R. 21, p. 12.]  Even a cursory review of

14

that case, however, demonstrates that it bears no similarity to this one. The attorneys in <u>McCarty</u> were ultimately sanctioned under Fed. R. Civ. P. 11 for pursuing baseless claims.

What the Defendants fail to note is that in <u>McCarty</u>, the attorneys filed a workers' compensation claim, which was denied, then appealed from that denial to an Administrative Law Judge who also denied the claim, then appealed that decision to the Massachusetts Appeals Court, which affirmed the ALJ's decision. <u>Id.</u> at 364. Counsel did not stop there, however, and instead filed a second workers' compensation claim (which was dismissed on <u>res judicata</u> grounds) as well as separate state court action – all of which asserted the same harms based on the same operative facts. <u>Id.</u>

There are simply no parallels between the conduct of the attorneys in <u>McCarty</u> and the undersigned counsel. Before filing the underlying litigation in the District Court, the Plaintiffs did not first file a workers' compensation claim, let alone two separate claims based on the same facts. The Plaintiffs have also not pursued multiple appeals and lost. Instead, the Plaintiffs have presented detailed allegations, supported by credible evidence and proper legal arguments, that their claims are not barred by the exclusivity provision of the KWCA. Neither the filing of the original action nor this appeal supports an award of damages or the imposition of sanctions.

**B.    The Plaintiffs Have Raised Legitimate Arguments That Personal Jurisdiction Over KPNV Exists.**

The Defendants' mischaracterizations of the record are perhaps most important to the issue of personal jurisdiction.  Their oft-repeated claim that the Plaintiffs were permitted to take jurisdictional discovery is, as noted above, belied by the record.[2]  Jurisdictional discovery in this context would permit the Plaintiffs to serve specific written discovery requests on the Defendants and/or depose one or more of their corporate representatives.  That certainly never happened in this case.

Nonetheless, and further undermining the Defendants' current allegations, the Plaintiffs are still arguably entitled to jurisdictional discovery.  According to the District of Columbia Circuit Court of Appeals, "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  GTE New Media Servs. v. BellSouth Corp., 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) (citing Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir.

---

[2]    The Plaintiffs' requests to take jurisdictional discovery were ignored by the District Court.  [See, e.g., Response to KPNV's Motion to Dismiss, RE 23, Page ID #349 ("To the extent the Court believes factual issues remain with respect to these questions, Plaintiffs request the opportunity to conduct discovery . . . ."); Sur-Reply to KPNV's Motion to Dismiss, RE 72, Page ID #1616 (noting that "Plaintiffs have requested the opportunity to conduct discovery . . ."); id., Page ID #1621 ("factual questions exist that preclude dismissal and should prompt the Court to permit discovery regarding the jurisdictional issue . . .").]

1987) (vacating, in part, the District Court's judgment, because "Crane's case was dismissed with no opportunity for discovery on the issue of personal jurisdiction")). There can be little question that, given a fair opportunity for jurisdictional discovery from the Defendants, the Plaintiffs could supplement their jurisdictional allegations to prove that personal jurisdiction over KPNV is warranted. Such a scenario removes any doubt about the propriety of the instant appeal.

Continuing their desperate and misguided attempt to portray the Plaintiffs in a negative light, the Defendants now contend that the evidence in the record demonstrates that no one from KPNV ever visited the Facility. In making this claim, the Defendants assert that "after having been educated at the hearing that no one from KPNV had ever been to the Danville Plant, Appellants should have known better than to have appealed the dismissal of the claims against KPNV." [Motion for Damages, R. 21, p. 14 (emphasis added) (citing Transcript, R. 69, Page ID## 1507 ln 9-13, 1476 ln 2-5 (testimony of Mr. Weeks that "to the best of my knowledge, no one from KPNV ever visited the Danville Facility").] First, it's worth noting that Mr. Weeks's testimony is far from absolute and is merely limited to the best of his personal knowledge. That knowledge, according to Mr. Weeks's own testimony, ceased being relevant in 2001 when he left his position as Plant Manager of the Facility – another key fact conveniently omitted by Philips.

17

[Transcript, DE 69, Page ID# 1489.]  Second, and more importantly, Mr. Weeks's testimony is squarely contradicted by the testimony of one of the <u>Defendants'</u> other witnesses.

KPNV, in the Reply in support of its Motion to Dismiss, attached the Declaration of Mr. John Winkler, who succeeded Mr. Weeks as Plant Manager of the Facility.  [Winkler Declaration, Exhibit B, DE 26-2, Page ID# 447.]  Mr. Winkler states that "operations personnel from KPNV would visit the Danville plant once or twice per year[.]"  [<u>Id.</u>]  Mr. Winkler further testified that for the last 18 months of his employment, he reported directly to supervisors at KPNV.  [<u>Id.</u>] While Mr. Weeks could still arguably be correct in his personal recollection[3] (i.e., that he was unaware of KPNV representatives visiting the Facility during his relatively short three-year term), the Defendants' assertion that no one from KPNV had ever been to the Facility is nothing short of a complete misrepresentation and either conflicts with or ignores other testimony <u>that the Defendants themselves put in the record</u>.  Indeed, the Defendants' statements to this Court are difficult if not impossible to reconcile with their own evidence.

---

[3]      Notably, during the evidentiary hearing, defense counsel asked Mr. Weeks whether he had reviewed Mr. Winkler's Affidavit and whether he agreed with it.  Mr. Weeks responded affirmatively to both questions.  [Transcript, RE 69, Page ID# 1496.]

Mr. Winkler's testimony that such visits were routine during his tenure as Plant Manager is arguably sufficient to establish personal jurisdiction. Regardless, and as the Plaintiffs' briefs make abundantly clear, there is more than sufficient additional evidence in the record – despite the District Court's refusal to allow jurisdictional discovery – to make a legitimate argument that KPNV is subject to personal jurisdiction in Kentucky. The Plaintiffs have done precisely that. [See, e.g., Transcript of Deposition of Scott Harris, Ph.D. ("Harris Depo. Tr."), RE 64, Page ID #845-946 (testifying, among other things, that Mr. Burger identified himself as a representative of KPNV, that he appeared to be the lead decision-maker, and that Mr. Burger was aware that Hazardous Substances had permitted to escape the Site in levels that were in excess of regulatory limits which were dangerous to human health and safety)]. Because there is nothing remotely frivolous about the Plaintiffs' personal jurisdiction arguments, the Defendants' Motion for Damages must be denied.

## C.    **Foreign Service Costs**

The Defendants argue that the Plaintiffs' request for the costs associated with obtaining service on KPNV is frivolous and should be sanctioned. In support of their contention, the Defendants cite several District Court cases from around the country – none of which is binding on authority on this Court or the District Court below. Further, all of those cases deal expressly with sanctions specifically

19

identified in Fed. R. Civ. P. 4(d)(2).  The Plaintiffs, however, did not expressly rely on that Rule in their request for costs.

Instead, the Plaintiffs correctly noted that the Federal Rules of Civil Procedure expressly impose a duty upon all parties to avoid unnecessary expenses. Counsel for KPNV could have saved considerable time and money had he simply agreed to accept service for KPNV – just as he did for the American Philips entity. Instead, Plaintiffs were forced to incur the significant costs associated with compliance with service under the Hague Convention, including translation and other costs that could easily have been avoided.  Thus, the Plaintiffs have argued that even a foreign corporation like KPNV, as an entity subject to service under Rule 4(h), has a <u>duty</u> to "avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d) (stating that the Rule applies to "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)."). While perhaps this can be described as a novel argument, it is far from warranting sanctions of any kind.

## III.    <u>CONCLUSION</u>

A review of the record before the District Court as well as the briefing before this Court plainly demonstrates that the Plaintiffs' arguments are anything but frivolous.  The Defendants' Motion for Damages is entirely without merit and should be denied.

20

Respectfully submitted,

Dated: January 15, 2016

/s/ Richard A. Getty
RICHARD A. GETTY
        and
JESSICA K. WINTERS

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:   (859) 259-1909
rgetty@gettylawgroup.com
jwinters@gettylawgroup.com

Counsel For Appellants,
Elbert Cox, Jr., Cecil Wayne Franklin,
John Spears, Wanda Beasley, Donald
King, Lindsey Pennington, Teresa
Preston, And Beverly Presley
(Personal Representative Of The
Estate Of Annabell Gordon), On
Behalf Of Themselves And Others
Similarly Situated

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Appellants' Response In Opposition To Appellees' Motion For Sanctions and Damages was served on the 15th day of January, 2016, electronically and in accordance with the method established under this Court's CM/ECF procedures upon all parties in the electronic filing system in this case.

/s/ Richard A. Getty            
Counsel For Plaintiffs-Appellants

mwepld0477